UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-20354-CR-SMITH

UNITED STATES OF AMERICA

v.

HECTOR SUAREZ GONZALEZ,
    a/k/a "Pana,"

        Defendant.
_____/

## DETENTION ORDER

On June 19, 2019, this Court held a hearing, pursuant to Title 18, U.S.C. § 3142(f), to determine whether the defendant, Hector Suarez Gonzalez ("Suarez Gonzalez"), should be detained prior to trial. Having considered the evidence presented at the pre-trial detention hearing, the pre-trial services report, arguments of counsel and the factors enumerated in Title 18, U.S.C. § 3142(g), this Court finds that no condition or combination of conditions will reasonably assure the appearance of Suarez Gonzalez as required. Therefore, it is hereby ordered that Suarez Gonzalez shall be detained prior to trial and until the conclusion thereof.

In accordance with the provisions of Title 18, U.S.C. § 3142(i)(1), this Court makes the following findings of fact and statement of reasons for the detention:

1.     The charges against Suarez Gonzalez are serious. Suarez Gonzalez is charged in an eleven-count indictment with conspiracy to commit health care fraud and wire fraud, in violation of Title 18, United States Code, Section 1349 (Count 1); health care fraud, in violation of Title 18, United States Code, Section 1347 (Counts 2 through 10); and conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h) (Count 11).

2. The weight of the evidence against Suarez Gonzalez is substantial. The government proffered the following evidence at the detention hearing:

   a. Suarez Gonzalez was a leader in a conspiracy that caused Care Home Health Services, Tri-County Homecare, and Nu-Wave Home Health Care to bill Medicare for approximately $80.4 million in false and fraudulent claims between approximately October 2016 and May of 2019, of which Medicare paid approximately $53.4 million. These false and fraudulent claims consisted of claims for home health services purportedly provided to eligible Medicare beneficiaries. In reality, the home health treatments were never rendered. It was further established that Suarez Gonzalez participated in a conspiracy to launder the proceeds of the fraud using accounts in the names of nominee owners and the names of shell corporations that were also in the names of nominee owners, which accounts he controlled with his co-conspirators.

   b. Suarez Gonzalez generally oversaw the business operations of the scheme.

   c. Suarez Gonzalez sent text messages to a co-defendant, identifying the names of shell companies, bank accounts and account numbers, and directing the flow of money between those accounts. Suarez Gonzalez also made at least one phone call in which he was heard discussing actions and plans in furtherance of the scheme.

   d. Utility bills found at the location where billing records and cash related to the scheme were recovered were connected to Suarez Gonzalez's phone number and payments by Suarez Gonzalez for utilities at that location.

3. The pertinent history and characteristics of Suarez Gonzalez support pre-trial

detention. Suarez Gonzalez was a leader in a criminal organization that received $53.4 million from Medicare during the period of the allegedly fraudulent activity. Approximately $44 million of this amount has not been accounted for, potentially providing Suarez Gonzalez with the resources to flee. The pre-trial services report indicates that Suarez Gonzalez has significant foreign connections, including extended family in Cuba. Moreover, the scheme involved close coordination with individuals who moved to and from Cuba, a country that does not have an extradition treaty with the United States, and directing those individuals to make themselves unavailable in the United States by remaining in Cuba after participating in the scheme. Additionally, Suarez Gonzalez took steps to hide his identity, including by the use of aliases and nominee owners to effectuate the scheme.

9. Based on the substantial weight of the evidence against Suarez Gonzalez; Suarez Gonzalez's connections to Cuba; Suarez Gonzalez's potential access to $44 million of unaccounted-for funds; and Suarez Gonzalez's use of aliases, the Court finds by a preponderance of the evidence that Suarez Gonzalez poses a risk of flight. The Court further finds that there are no conditions or combination of conditions which will reasonably assure Suarez Gonzalez's appearance as required.

Therefore, the Court hereby directs that:

a. Suarez Gonzalez be detained without bond;

b. Suarez Gonzalez be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

c. Suarez Gonzalez be afforded reasonable opportunity for private consultation with his counsel; and

    d.    On order of a court of the United States or on request of an attorney for the government, that the person in charge of the corrections facility in which Suarez Gonzalez is confined, deliver him to a United States Marshal for the purpose of an appearance in connection with court proceedings.

DONE AND ORDERED at Miami, Florida this 25th day of June, 2019.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:   United States District Judge Rodney Smith
      U.S. Probation Office, Pretrial Services Unit
      U.S. Marshals Service
      Counsel of Record